IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ANTHONY SALCIDO,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>D. L. RUNNELS, Warden,<br><br>　　　　　Respondent.. / | No. C 05-4884 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

## STATEMENT

A jury convicted petitioner of second degree murder with personal discharge of a firearm causing death. He was sentenced to forty years to life in prison. His conviction was affirmed on direct appeal by the California Court of Appeal, and the California Supreme Court denied review.

As grounds for habeas relief he asserts that: (1) his due process rights were violated by the trial court's refusal to sever the murder charge from a charge of attempted murder of a different victim; (2) his due process rights were violated by admission of evidence of the attempted murder of another person to show that the killing was not accidental; (3) his due

1  process rights were violated by the trial court's failure to give a limiting instruction regarding
2  its use of the evidence of attempted murder of another person; (4) his due process rights were
3  violated by the prosecutor's failure to disclose certain exculpatory evidence to the grand jury
4  and the trial court's subsequent refusal to dismiss the indictment despite that omission; (5) his
5  due process rights were violated by the trial court's instructing on second degree felony murder
6  when there was no evidence of an independent felony; (6) the prosecution committed
7  misconduct; (7) his due process rights were violated when his girlfriend did not testify; (8) his
8  rights to due process and trial by jury were violated when the trial court gave CALJIC 17.41.1,
9  regarding jurors' obligation to report misconduct by other jurors; and (9) his due process rights
10 were violated when the trial court gave CALJIC 2.90, defining "beyond a reasonable doubt."

11       Petitioner was charged with the murder of Harold Taft and, separately, with the
12 attempted murder of Robert Alvarez (Exh. K (court of appeal opinion) at 17).  The cases were
13 consolidated, petitioner's motion to sever was denied, and they were tried together (*id.*).

14       Petitioner and his friend Taft were together with several others about 10 p.m. on the
15 evening of December 20, 1999, outside petitioner's house in Crockett (*id.* at 2).  Taft challenged
16 petitioner to fight, for no very obvious reason (*id.* at 3-4).  Petitioner pointed a gun at Taft's
17 face; Taft brushed it away, and petitioner raised it again from point-blank range and shot Taft in
18 the head (*id.* at 4).  Petitioner did not deny that he shot Taft, but contended that it was an
19 accident (*id.* at 10-12).

20       On April 24, 1999, about midnight, Robert Alvarez was shot at a party in San Pablo (*id.*
21 at 12).  Alvarez "testified unwillingly at the trial, fearing for his daughter's safety."  (*Id.* at 12.)
22 He had told the police, however, that it was petitioner shot him (*ibid.*).  At trial he contended
23 that he did not know who shot him (*id.* at 13).  He acknowledged being a member of a gang
24 whose enemy is a gang to which some of defendant's friends and relatives belong (*ibid.*).
25 Alvarez' mother testified that Alvarez told her at the hospital that it was petitioner who shot
26 him (*ibid.*).  Another witness, Rivas, also disclaimed his statements to police and to the grand
27 jury that it was petitioner who shot Alvarez (*id.* at 14-15).  Petitioner admitted being at the party
28 but contended he did not shoot Alvarez (*id.* at 17).

2

When the jury informed the trial court that it was deadlocked on the degree of the Taft murder, the court allowed the prosecution to dismiss the first degree allegation and substitute a second degree allegation (*id.* at 17-18). The jury found petitioner guilty of the second-degree murder of Taft and deadlocked on the Alvarez charge (*id.* at 18).

## DISCUSSION

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

3

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.  ISSUES PRESENTED**

**1.  SEVERANCE**

Petitioner contends that his due process rights were violated by the trial court's refusal to sever the Taft and Alvarez charges. This claim was rejected by the California Court of Appeal, although it only discussed the state law basis for the claim (Exh. K at 18-20).

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his or her trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. *Grisby*, 130 F.3d at 370. Nor need the court be concerned with the procedural rights to severance afforded in federal trials. *Id.* The inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice

4

1  great enough to render the trial fundamentally unfair. *Id.*  In addition, the impermissible joinder
2  must have had a substantial and injurious effect or influence in determining the jury's verdict,
3  the prejudice standard applicable in all state-conviction habeas cases. *Sandoval v. Calderon*,
4  241 F.3d 765, 772 (9th Cir. 2000).

   The risk of prejudice from joinder is especially great when the prosecutor encourages
the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even
though the evidence is not cross-admissible, and when the evidence of one crime is
substantially weaker than the evidence of the other crime. *Bean v. Calderon*, 163 F.3d 1073,
1084-85 (9th Cir. 1998).  But joinder generally does not result in prejudice if the evidence of
each crime is simple and distinct (even if the evidence is not cross-admissible), and the jury is
properly instructed so that it may compartmentalize the evidence. *Id.* at 1085-86.

   In this case the evidence of the two crimes was separate and distinct, as they involved
completely individual incidents.  Furthermore, joinder generally does not result in prejudice if
the jury did not convict on all counts, because it presumably was able to compartmentalize the
evidence. *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000).  That is what happened
in this case – the jury convicted on the charge of killing Taft but not on the Alvarez count (Exh.
K at 19).

   For these reasons, the joinder did not violate due process, so the state courts' rejection of
this claim was not contrary to, nor an unreasonable application of, clearly-established United
States Supreme Court authority.

   **2.    ADMISSION OF EVIDENCE OF ALVAREZ SHOOTING**

   Respondent is correct that petitioner has failed to allege any federal constitutional
violation as to this claim.  Habeas relief is not available for an error of state law, which is all
that is claimed here. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner cannot
obtain habeas relief on this claim.

   **3.    LIMITING INSTRUCTION**

   Petitioner contends that his due process rights were violated by the trial court's failure to
give a limiting instruction explaining to the jury the purposes to which they could put the

Alvarez evidence in considering the Taft shooting. Respondent contends that this claim is procedurally barred.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or if he can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. In order to establish that a fundamental miscarriage of justice would result from an application of procedural default a petitioner has to prove factual innocence. *Gandarela v. Johnson*, 275 F.3d 744, 749-50 (9th Cir. 2002); *Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001).

The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 296 F.3d 752, 763 (9th Cir. 2002). "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's." *Id.* at 762.

Respondent contends that counsel's failure to request the limiting instruction bars this claim, because if alerted to the need for such an instruction the trial court could have avoided the putative error. The California Court of Appeal agreed. Ex. K at 21. That California's similar contemporaneous objection rule operates as a procedural bar has been recognized by Ninth Circuit. *Davis v. Woodford*, 384 F.3d 628, 653-54 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

The respondent has adequately pled the existence of an independent and adequate procedural bar. Under *Bennett* this shifts the burden to the petitioner. *See Bennett*, 296 F.3d at

6

762. He has, however, not demonstrated the inadequacy of the state procedure to serve as a bar, for instance by providing citations showing inconsistent application. The claim is procedurally defaulted.

Petitioner having made no attempt to show cause and prejudice for the default, or to show that failure to consider the claim will result in a fundamental miscarriage of justice, the court concludes that this claim is barred by the procedural default.

Alternatively, the court will consider the merits of the claim.

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d at 475-76. Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). In this case that heavy burden has not been met, as the jury's failure to find petitioner guilty on the Alvarez counts indicates its ability to compartmentalize the evidence. This claim is without merit, so the state courts' rejection of it was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### 4. MOTION TO DISMISS INDICTMENT

Petitioner contends that the denial of his motion to dismiss the Alvarez indictment violated his due process rights. Petitioner contends that the motion should have been granted because the prosecutor did not disclose to the grand jury that Alvarez told the trauma surgeon treating him that he did not know who shot him. Discussing only the state-law claim, the court of appeal held (1) that this claim was moot in light of the jury's failure to convict on the Alvarez claim and its conclusion that petitioner suffered no prejudice from the joint trial; and (2) that petitioner was not prejudiced because the doctor's statement was admitted at trial (Exh. K at 21).

There is no Supreme Court authority holding that state criminal defendants are entitled to due process in state grand jury proceedings. *Herman v. Turnbull*, 2007 WL 2228958, *2 (9th Cir. Aug. 3, 2007). The state courts' rejection of this claim therefore could not have been contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

7

**5.     CALJIC 8.51**

The trial court gave CALJIC No. 8.51 as follows:

> If a person causes another's death while committing a felony which is dangerous to human life, the crime is murder. If a person causes another's death while committing a misdemeanor or infraction which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter. [¶] There are many acts which are lawful but nevertheless endanger human life. If a person causes another's death by doing an act or engaging in a conduct in a criminally negligent manner, without realizing the risk involved, he is guilty of involuntary manslaughter. If, on the other hand, the person realized the risk and acted in total disregard of the danger to life involved, malice is implied, and the crime is murder.

(Exh. K at 22 n.6.)

Petitioner contends that the first sentence of this instruction amounted to an instruction on second-degree felony murder, and that there was no evidence of an underlying felony of the sort which under California law could support a conviction for felony murder. The only possible underlying felony on the facts of the case, he claims, would be assault with a deadly weapon, and California law does not allow that offense to be the underlying offense for felony murder. The jury, he claims, could have found him guilty of second-degree murder on a felony murder theory, rather than finding beyond a reasonable doubt that he committed the crime with malice, implied or express.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id*. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982). Finally, the defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle*, 502 U.S. at 73.

There was no felony-murder instruction given, nor any instruction on what the parties agree would be the only possible underlying felony, assault with a deadly weapon. And as the respondent points out, the trial court gave several instructions which required malice (*see, e.g.,*

8

Exh. B at 1187, 1190-91, 1195-97). The one sentence, considered in the context of the instructions as a whole, could not have so infected the trial as to violate due process. In view of this, the state courts' rejection of this claim could not have been contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### 6. PROSECUTORIAL MISCONDUCT

Petitioner contends that the prosecutor committed misconduct in closing argument in two respects: (1) by attacking defense counsel Tony Serra, saying that he hoped someday to be half as good as defense counsel at "telling a story" and that defense counsel is paid "to get his client off the hook;" and (2) by stating facts not in evidence, saying that most homicides involve people who know each other and that his office would not charge assault with a deadly weapon as a misdemeanor.

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated only if the prosecutor's misconduct was sufficient to render the trial "fundamentally unfair." *Id.*

A prosecutor may not gratuitously attack a defendant's choice of counsel or defense counsel's integrity and veracity. *Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983). However, there is no constitutional error unless the comments were prejudicial to the point of denying the defendant a fair trial. *Compare United States v. Rodrigues*, 159 F.3d 439, 449-51 (9th Cir. 1998) (combination of prosecutor's misstatement of the law with slander of defense counsel was prejudicial where there was no rebuke of false accusations by the court, no response was allowed the vilified lawyer and no curative instruction was given), *amended*, 170 F.3d 881 (9th Cir. 1999) *with United States v. Foster*, 711 F.2d 871, 883 (9th Cir. 1983) (implication that defense counsel was part of conspiracy to distribute heroin was neutralized by prosecutor's corrective statement in response to objection by defense counsel).

In this case defense counsel objected to the prosecutor's remarks about him as a "personal attack on me" and the trial court instructed the prosecutor to "stick to the facts."

9

1  (Exh.B at 1308.)  Given this, and because the objected-to remarks were made in passing and
2  minor, the misconduct was not sufficient to deny petitioner a fair trial.

3        The prosecutor's response to defense counsel's contention that petitioner could not have
4  intended to shoot Taft because they were friends was that "most homicides involve a victim
5  who knows the killer."  (Exh. K at 24.)  Petitioner contends that this was misconduct because it
6  referred to facts not in evidence.  The prosecutor's response to the defense suggestion that the
7  jury should treat petitioner's conduct as "brandishing a weapon" and thus find him guilty of
8  only misdemeanor manslaughter was that the prosecution would not charge such an offense as a
9  misdemeanor.  Petitioner contends that this also was a reference to facts not in evidence.

10        As to both of these contentions, the remarks were minor and made in passing, were in
11  rebuttal to defense contentions, and were not objected-to.  They were not sufficient to render the
12  trial fundamentally unfair.

13        Because there was no prosecutorial misconduct, the state courts' rejection of this claim
14  was not contrary to, nor an unreasonable application of, clearly-established Supreme Court
15  authority.

16        **7.**     **WITNESS'S REFUSAL TO TESTIFY**

17        Petitioner's girlfriend invoked her Fifth Amendment privilege not to testify when called
18  as a witness (Exh. K at 25).  As a result her preliminary hearing testimony was read into the
19  record (*id.*).  Petitioner moved for a new trial, in part arguing that the girlfriend did not testify
20  because she was afraid and that when she and petitioner were fleeing the scene of the Taft
21  murder petitioner had asked her to go back and she had refused (*id.*).  The trial court concluded
22  that although the preliminary hearing testimony did not include the statement about petitioner
23  wanting to go back to the scene, that omission was not sufficiently material to make the trial
24  unfair (*id.*).

25        Petitioner contends that the denial of his motion for new trial was a violation of his due
26  process rights.  Considered as petitioner phrases it, as a claim based on the denial of a new trial,
27  this presents only a state law claim which cannot be grounds for federal habeas relief.
28  Alternatively, given the relatively minor nature of the point and the doubt cast upon it by

10

1  petitioner's failure to mention his desire to return in his own testimony at trail, its absence was
2  not sufficient to render the entire trial fundamentally unfair and a violation of petitioner's due
3  process rights. The state courts' rejection of this claim was not contrary to, nor an unreasonable
4  application of, clearly-established Supreme Court authority.

### 8.  CALJIC 17.41.1

Petitioner claims that the trial court violated his right to due process by giving CALJIC No. 17.41.1 and that such an instruction inhibits jury deliberation and invades jury privacy. CALJIC No 17.41.1 provides:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

The Ninth Circuit has held that there is no "clearly established United States Supreme Court precedent" which establishes that an anti-nullification instruction such as CALJIC 17.41.1 violates a constitutional right. *Brewer v. Hall*, 378 F.3d 952, 955-56 (9th Cir. 2004). The court therefore held that a California appellate court's rejection of a challenge to 17.41.1 could not be contrary to, or an unreasonable application of, clearly established Supreme Court authority. *Id.* at 956[1]. In light of *Brewer*, that the trial court gave CALJIC 17.41.1 cannot be the basis for federal habeas relief.

### 9.  CALJIC 2.90

Petitioner contends that the use of CALJIC 2.90, defining "reasonable doubt" in terms of "abiding conviction," violates due process. This claim was rejected in *Lisenbee v. Henry*, 166 F.3d 997, 999-1000 (9th Cir. 1999). The state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### CONCLUSION

---

[1] Juror nullification is not a right under the Constitution, laws or treaties of the United States. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting no right to jury nullification in the context of federal habeas review); *see also United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (federal defendants are not entitled to jury nullification instructions). Any instruction that arguably impeded this non-existent right did not violate the Constitution, laws or treaties of the United States and cannot justify habeas relief.

11

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October   3  , 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\SALCIDO884.RUL.wpd

12